UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

LAURIE ALICE GIORDANO, individually, and as Personal Representative of the Estate of ZACHARY TYLER MARTIN-POLSENBERG,

    Plaintiff,

v.

Case No: 2:19-cv-439-FtM-99NPM

THE SCHOOL BOARD OF LEE COUNTY, FLORIDA, JAMES DELGADO, Individually and in his official capacity, and LEE COUNTY EMS, through LEE COUNTY, a Political Subdivision of the State of Florida,

    Defendants.

**OPINION AND ORDER**

This matter comes before the Court on Defendants James Delgado and the School Board of Lee County's Motion to Dismiss Counts I and II brought pursuant to 42 U.S.C. § 1983 (Doc. #36) and Plaintiff's Response (Doc. #43). For the reasons set forth below, the Motion is granted with leave to amend.

**I.**

This case involves the tragic death of a Riverdale High School football player. Together with claims for negligence (Count IV) and wrongful death (Count V), Counts I and II are brought under 42 U.S.C. § 1983 against Defendants James Delgado

and the School Board of Lee County ("defendants") by Laurie Alice Giordano individually and on behalf of the estate of her son, Zachary Tyler Martin-Polsenberg, for alleged violations of his substantive due process rights under the Fourteenth Amendment to the United States Constitution.

The Amended Complaint (Doc. #34) alleges as follows: At around 7:00 a.m. on the morning of June 29, 2017, Zachary arrived at Riverdale High School for summer football practice. (Id., ¶ 6.) The practice lasted several hours "while the temperature reached 90 degrees." (Id. ¶ 26.) Despite knowing the importance of hydration in such conditions, Coach James Delgado withheld water (despite Zachary's pleas) and discouraged the players from taking breaks. (Id. ¶¶ 37-40.) He threatened to punish players who asked for water, telling them they would "walk off" the team. (Id. ¶ 39.) Zachary showed signs of heat exhaustion during the drills, but the coaches ignored his symptoms and forced him (along with the other player) to run "never-ending" sprints towards the conclusion of practice that day. (Id. ¶¶ 31, 40.)

As the players were huddling after practice, Zachary collapsed, became incoherent, began convulsing, and vomited—all obvious signs of heat exhaustion that were ignored. (Doc. #34, ¶¶ 41, 43.) There was no trainer or health care professional present on the field. Coach Delgado did nothing for several minutes, and it was only after Zachary's mother was notified that

Coach Delgado called 911. (Id. ¶¶ 42-46, 55.) Coach Delgado requested an ambulance, but intentionally downplayed the severity of the situation and told the operator that Zachary was "fine." (Id. ¶ 47.) In the meantime, the coaches were unable to administer medical care such as ice packs or an ice bath because they lacked the necessary equipment or failed to use it. (Id. ¶ 54.) Plaintiff also alleges that there was not a trainer on site, which is "required or should be required by football coaching standards." (Id. ¶ 55.) Plaintiff alleges that defendants' actions were all in violation of Florida High School Athletic Association Policy 41. (Id. ¶ 24.)

Lee County EMS was slow to arrive, a delay attributed to Coach Delgado's statements to the emergency operator. (Doc. #34 ¶¶ 47-48.) EMS did not provide adequate emergency care, and Zachary fell into a heat-induced coma. He could not recover from his injuries and passed away on July 10, 2017.

As for the federal claims under 42 U.S.C. § 1983 for "unconstitutional deprivation of life", plaintiff alleges that Coach Delgado deprived Zachary of due process (his right to bodily integrity and life) by forcing him to perform physical drills in the intense heat, denying him water, and failing to seek emergency medical care when he was injured (among other reasons listed at paragraph 71 of the Amended Complaint). (Doc. #34, ¶¶ 70-71.) Plaintiff alleges that Coach Delgado and the School Board had a

legal duty to Zachary to provide a safe and adequate football practice environment. (Id., ¶¶ 66, 82.) The School Board is also included because it conducted and sponsored the summer football practice, approved of this conduct, and maintained "dangerous policies, rules, and regulations" that neglected student safety. (Id. ¶ 83.)

In short, plaintiff alleges that Coach Delgado and the School Board's actions constituted a deliberate indifference to the health and safety of Zachary.

## II.

Under Federal Rule of Civil Procedure 8(a)(2), a Complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citation omitted). To survive dismissal, the factual allegations must be "plausible" and "must be enough to raise a right to relief above the speculative level." Id. at 555. See also Edwards v. Prime Inc., 602 F.3d 1276, 1291 (11th Cir. 2010). This requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations omitted).

In deciding a Rule 12(b)(6) motion to dismiss, the Court must

accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff, Erickson v. Pardus, 551 U.S. 89 (2007), but "[l]egal conclusions without adequate factual support are entitled to no assumption of truth." Mamani v. Berzain, 654 F.3d 1148, 1153 (11th Cir. 2011) (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. "Factual allegations that are merely consistent with a defendant's liability fall short of being facially plausible." Chaparro v. Carnival Corp., 693 F.3d 1333, 1337 (11th Cir. 2012) (internal citations omitted). Thus, the Court engages in a two-step approach: "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679.

### III.

Section 1983 imposes liability on any person who, under color of state law, deprives a person "of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. To state a claim under 42 U.S.C. § 1983, a plaintiff must allege "(1) that the defendant deprived [the plaintiff] of a right secured under the Constitution or federal law and (2) that such deprivation occurred under color of state law." Arrington v. Cobb Cty., 139 F.3d 865, 872 (11th Cir. 1998). A local government may

be held liable under § 1983 only "if the plaintiff shows that a 'custom' or 'policy' of the municipality was the 'moving force' behind the constitutional deprivation."  Sewell v. Town of Lake Hamilton, 117 F.3d 488, 489 (11th Cir. 1997) (citing Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690–94 (1978)).  The government entity "must be found to have itself caused the constitutional violation at issue; it cannot be found liable on a vicarious liability theory."  Skop v. City of Atlanta, 485 F.3d 1130, 1145 (11th Cir. 2007) (citing Monell, 436 U.S. at 694–95).

Defendants assert that plaintiff's § 1983 claims against Coach Delgado and the School Board fail because (1) there is no underlying constitutional violation and, (2) if there is an underlying constitutional violation, Coach Delgado is entitled to qualified immunity.  Plaintiff responds that defendants' arguments require the Court to look beyond the four corners of the Amended Complaint and make factual determinations whether the conduct of Coach Delgado rises to the level of a constitutional violation, which is not proper at the motion to dismiss stage.

The Court first determines whether there is an underlying constitutional violation.

**A. Underlying Constitutional Violation**

The Fourteenth Amendment prohibits States and their components from "depriv[ing] any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV, §

1. "[T]he Due Process Clause was intended to prevent government officials from abusing their power, or employing it as an instrument of oppression." Cty. of Sacramento v. Lewis, 523 U.S. 833, 846 (1998) (internal citations omitted). The substantive component of the Due Process Clause "protects individual liberty against 'certain government actions regardless of the fairness of the procedures used to implement them.'" Collins v. City of Harker Heights, 503 U.S. 115, 125 (1992) (quoting Daniels v. Williams, 474 U.S. 327, 331 (1986)). Accordingly, the Fourteenth Amendment must not be used through § 1983 as a "font for tort law" to convert state tort claims into federal causes of action. Waddell v. Hendry Cty. Sheriff's Office, 329 F.3d 1300, 1305 (11th Cir. 2003). "Nothing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors. The Clause is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security." DeShaney v. Winnebago Cnty. Dep't of Soc. Servs., 489 U.S. 189, 195 (1989).

Only in certain limited circumstances does the Constitution impose affirmative duties of care on the state. Doe v. Braddy, 673 F.3d 1313, 1318 (11th Cir. 2012). As originally defined by the Supreme Court, those circumstances exist where (1) the state takes a person into custody, confining him against his will, and

(2) when the state creates the danger or renders a person more vulnerable to an existing danger. DeShaney, 489 U.S. at 198–201. The "state-created danger" exception has since been replaced by the standard employed by the Supreme Court in Collins, 503 U.S. at 128. Waddell, 329 F.3d at 1305. Now, the government's affirmative acts "rise to the level of a substantive due process violation [when] the act can be characterized as arbitrary or conscience shocking in a constitutional sense." Id. (citing Collins, 503 U.S. at 128).

### 1. Duty Created by a Custodial Relationship

"A duty of protection can arise where the state has a custodial relationship with the individual, arising from such circumstances as incarceration in prison or involuntary commitment in a mental institution." Davis v. Carter, 555 F.3d 979, 982 n. 2 (11th Cir. 2009) (citing DeShaney, 489 U.S. at 198–99). Mere compulsory attendance at a public school does not give rise to a constitutional duty of protection under the Due Process Clause because public schools generally lack the requisite control over children to impose such a duty of care upon these institutions. Id. (citing Wright v. Lovin, 32 F.3d 538, 540 (11th Cir. 1994)). See also Wyke v. Polk Cty. Sch. Bd., 129 F.3d 560, 569 (11th Cir. 1997). Like the Eleventh Circuit, "each circuit to have addressed the issue has concluded that public schools do not have a special relationship with their students, as public schools do not place

the same restraints on students' liberty as do prisons and state mental health institutions." Doe ex rel. Magee v. Covington Cty. Sch. Dist. ex rel Keys, 675 F.3d 849, 858 (5th Cir. 2012) (citing cases).

The Eleventh Circuit has been "explicit in stating that 'deliberate indifference' is insufficient to constitute a due-process violation in a non-custodial setting." Davis, 555 F.3d at 983 (quoting Nix v. Franklin Cty. Sch. Dist., 311 F.3d 1373, 1377 (11th Cir. 2002)). The Eleventh Circuit's opinion in Davis, 555 F.3d 979, is particularly instructive here. In that case, the court found that because student Tyler Davis voluntarily participated in a workout session for the high school football team—an extracurricular after-school activity—no custodial relationship existed between himself and the school. The Court reaches the same result here. Plaintiff has failed to allege that Zachary had a custodial relationship with defendants at a voluntary summer football practice.

### 2. Conduct that Shocks the Conscience

Under the second exception, a constitutional violation may be present if the conduct of the governmental actor "shocks the conscience." "To rise to the conscience-shocking level, conduct most likely must be 'intended to injure in some way unjustifiable by any government interest.'" Davis, 555 F.3d at 982 (quoting Lewis, 523 U.S. at 849). Conduct by a government actor that would

amount to an intentional tort under state law would not, without more, rise to the level of the constitutional violation. See Dacosta v. Nwachukwa, 304 F.3d 1045, 1048 (11th Cir. 2002). "[O]nly the most egregious official conduct can be said to be arbitrary in the constitutional sense." Waddell, 329 F.3d at 1305.

In the educational setting, the Eleventh Circuit has found conscious-shocking conduct in only two cases—both involving excessive corporal punishment. In Neal v. Fulton County Board of Education, 229 F.3d 1069 (11th Cir. 2000), a high school coach intentionally struck a student with a metal weight lock, knocking the student's eye out of its socket, as a form of punishment for his involvement in a fight with another student. Id. at 1071. The Eleventh Circuit concluded that the coach's conduct rose to the level of a constitutional violation because a school official "intentionally us[ed] an obviously excessive amount of force that presented a reasonably foreseeable risk of serious bodily injury." Id. at 1076. In reaching its conclusion, the Eleventh Circuit made clear that the claims of excessive corporal punishment shaped the outcome. Id. Similarly, the Eleventh Circuit concluded in Kirkland v. Greene Cty. Bd. of Educ., 347 F.3d 903 (11th Cir. 2003), that a high school principal violated a student's constitutional rights after he struck the student with a metal

cane in the head, ribs, and back for disciplinary reasons. Id. at 904–05.

By contrast, no conscience-shocking constitutional violations occurred in Nix v. Franklin Cty. Sch. Dist., 311 F.3d 1373 (11th Cir. 2002), or Davis v. Carter, 555 F.3d 979 (11th Cir. 2009). In Nix, a high school teacher told his students to hold a live wire during a voltage-reading demonstration in his electromechanical class. Nix, 311 F.3d at 1374. The teacher warned his students that they might die if they accidently touched the exposed part of the wire. Id. The teacher increased the power to the wire, then turned away to answer a question. Id. When the teacher turned back to the students, he saw that one student had touched the wire and was gasping for breath. Id. After the student died, his parents brought a § 1983 suit and alleged that "the actions of the defendants 'were particularly arbitrary, reckless, and deliberately indifferent.'" Id. at 1376. The Eleventh Circuit, in concluding that the student's substantive due process rights were not violated, emphasized that mere negligence is insufficient to sustain a constitutional claim, while actions intended to injure and that are unrelated to any government interest are likely to rise to the conscience-shocking level. Id. at 1375. The court also noted that "[o]nly in the limited context of due-process claims based on excessive corporal punishment has this court held

that the intentional conduct of a high-school educator may shock the conscience." Id. at 1378.

In Davis, the plaintiffs bought a § 1983 action for violating their son's substantive due process rights after the son died the morning after a voluntary workout session for the school football team. Davis, 555 F.3d at 981. The plaintiffs contended that their son faced an intense and unreasonable practice that caused him to collapse and die the next morning. Specifically, plaintiffs alleged that the coaches failed to provide enough water to keep Davis hydrated, ignored signs and Davis' complaints that he was becoming dehydrated, subjected Davis to rigorous conditioning drills at the end of a two-hour practice, and failed to attend to Davis until after a team meeting, even though he had collapsed in the middle of the drills. Id. at 980–81. The plaintiffs further alleged that if a student did not perform all the exercises and activities in the workout, he would be subject to discipline from the coaches, such as more drills, exclusion from tryouts, or demotion to the junior varsity team. Id. On these facts, the Eleventh Circuit found that the coaches did not violate the student's constitutional rights because they did not engage in corporal punishment, physically contact the student, or otherwise "act[ ] willfully or maliciously with an intent to injure" the student. Id. at 984. The court noted that "the coaches were deliberately indifferent to the safety risks posed by

their conduct," but found that in a school setting, "allegations of deliberate indifference, without more, do not rise to the conscience-shocking level required for constitutional violations." Id.

Here, plaintiff states that the facts are more egregious than Davis as Coach Delgado made conscious decisions and intentional acts to deprive Zachary of water, delayed calling 911, and downplayed the severity of Zachary's condition. Plaintiff alleges also that the School Board essentially set the stage for such egregious actions to occur at one of its schools. Even so, while the alleged conduct might be mistaken or negligent, the Court follows Eleventh Circuit precedent and finds that these allegations do not rise to the conscience-shocking level. Plaintiff does not allege that Coach Delgado made physical conduct with Zachary or engaged in corporal punishment or acted with an intent to punish or injure the minor child. In sum, defendants' actions were not the type of intentional and excessive corporal punishments inflicted by the school officials in Neal and Kirkland. In reaching its conclusion, the Court did not veer outside the four corners of the Amended Complaint and accepted the allegations as true. The alleged conduct is no worse than the deliberate indifference shown by the coaches in Davis. The Court therefore finds that plaintiff has failed to allege a substantive due process violation and dismissal of Counts I and II is warranted.

**B. Remaining Claims**

The Court need not address the issues raised in Lee County's Motion to Dismiss (Doc. #37) as to the remaining counts. The remaining possible claims in the Amended Complaint are all state law claims. Even assuming these are properly pled, under 28 U.S.C. § 1367(c)(3), the Court would exercise its discretion and decline to exercise supplemental jurisdiction over the state claims. <u>Raney v. Allstate Ins. Co.</u>, 370 F.3d 1086, 1088–89 (11th Cir. 2004) (encouraging district courts to dismiss state claims where all claims which provided original jurisdiction have been dismissed.)

Because a party generally should be given at least one opportunity to amend before the court dismisses a complaint with prejudice, <u>Bryan v. Dupree</u>, 252 F.3d 1161, 1163 (11th Cir. 2001), the Court will provide plaintiff with a final opportunity to file an amended complaint setting forth claims.

Accordingly, it is hereby

**ORDERED AND ADJUDGED:**

1. Defendants James Delgado and the School Board of Lee County's Motion to Dismiss Counts I and II brought pursuant to 42 U.S.C. § 1983 (Doc. #36) is **GRANTED** and Counts I and II are dismissed without prejudice.

2. Plaintiffs may file a Second Amended Complaint within **FOURTEEN (14) days** of this Opinion and Order. Failure to file a

Second Amended Complaint will result in the closing of this case without further notice.

3. Defendant Lee County's Motion to Dismiss (Doc. #37) is **DENIED AS MOOT**.

**DONE and ORDERED** at Fort Myers, Florida, this __25th__ day of October, 2019.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Counsel of Record