**IN THE UNITED STATES DISTRICT
COURT FOR THE MIDDLE DISTRICT
OF FLORIDA FORT MYERS DIVISION**

LAURIE ALICE GIORDANO, individually,
and as Personal Representative of the Estate
of ZACHARY TYLER MARTIN-
POLSENBERG,

        Plaintiff,                        CASE NO.: 2:19-cv-00439

v.

THE SCHOOL BOARD OF LEE COUNTY, FLORIDA,
JAMES DELGADO, individually and in
his official capacity, and LEE COUNTY EMS,
through LEE COUNTY, a Political Subdivision of
the
State of Florida

        Defendants.

_____/

## SECOND AMENDED COMPLAINT

      COMES NOW, the Plaintiff, LAURIE ALICE GIORDANO, individually and as Personal

Representative of the Estate of ZACHARY TYLER MARTIN-POLSENBERG, and hereby files

this Second Amended Complaint against the Defendants, THE SCHOOL BOARD OF LEE

COUNTY, FLORIDA, JAMES DELGADO, individually and in his official capacity, and LEE

COUNTY EMS, through LEE COUNTY, a Political Subdivision of the State of Florida, and

alleges as follows:

## THE PARTIES

      1.      Plaintiff, LAURIE ALICE GIORDANO, individually and as Personal

Representative of the Estate of ZACHARY TYLER MARTIN-POLSENBERG (hereinafter

"Plaintiff"), is a resident of Lee County, Florida, and is entitled to bring this action as the personal

Laurie Giordano vs. Delgado, et al.
Second Amended Complaint

representative of Zachary Tyler Martin-Polsenberg's estate.

*2.*        Defendant, SCHOOL BOARD OF LEE COUNTY, FLORIDA (hereinafter "SCHOOL BOARD" or the "SCHOOL BOARD") is a public-school district located in Lee County, Florida, and is operating as a corporate body under authority of the Florida Legislature pursuant to Fla. Stat. § 1001.40 *et seq.*

3.        Defendant, JAMES DELGADO (hereafter "DELGADO") resides in Lee County, Florida and is sued individually and in his official capacity as head football coach for Riverdale High School (hereinafter "RIVERDALE HIGH"), a school organized and managed by the School Board.

## JURISDICTION

4.        Federal question subject matter jurisdiction is conferred upon this Court pursuant to 28 U.S.C. §1331 because Counts One and Two below are brought pursuant to 42 U.S.C. §1983. This Court has Supplemental subject matter jurisdiction over the remaining Counts of this Complaint pursuant to 28 U.S.C. §1367.

## VENUE

5.        Venue is proper before this Court pursuant to 28 U.S.C. §1391(b).

## ALLEGATIONS COMMON TO ALL COUNTS

6.        At approximately 7:00 a.m. on June 29, 2017, a healthy ZACHARY TYLER MARTIN-POLSENBERG (hereinafter "ZACHARY") arrived at RIVERDALE HIGH for summer football practice.

7.        ZACHARY had a statutory right to be safe while engaged in school activities such as the summer football practice on June 29, 2017. Fla. Stat. § 1002.20.

Laurie Giordano vs. Delgado, et al.
Second Amended Complaint

8.    The SCHOOL BOARD was charged with the responsibility of providing for the safety and well-being of ZACHARY while he was engaged in summer football practice on June 29, 2017. Fla. Stat. § 1003.02.

9.    In fact, the SCHOOL BOARD was required to adopt programs, policies and rules to ensure the safety and well-being of ZACHARY, and to prohibit activities that might threaten his safety and well-being when he attended the summer football practice on June 29, 2017. Fla. Stat. § 1001.43.

10.    Finally, the Fourteenth Amendment of the United States Constitution protects school children, like ZACHARY, "from state-occasioned damage to their bodily integrity" and deprivation of life. *Roventini v. Pasadena Independent School Dist.*, 981 F.Supp. 1013, 1018-19 (S.D. Tex. 1997), *citing Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 450-51 (5th Cir. 1994).

11.    The great emphasis, however, on competitive high school football in Southwest Florida and Lee County conducted by the SCHOOL BOARD, DELGADO, and in Florida high schools in general, is known throughout the nation.

12.    In the present case, the emphasis on football training and victories over safety led directly to the tragic heat-induced collapse, coma, and eventual death of ZACHARY that began on the RIVERDALE HIGH practice field on June 29, 2017.

13.    ZACHARY reported to summer football practice at RIVERDALE HIGH at 6'4" tall and 320 lbs., but was only 16 years old when he fell into a heat-induced coma on June 29, 2017, eventually resulting in his tragic death on July 10, 2017.

14.    ZACHARY never regained consciousness from his collapse on June 29, 2017 and died on July 10, 2017.

15.    DELGADO was conducting football practice on June 29, 2017, pursuant to

Laurie Giordano vs. Delgado, et al.
Second Amended Complaint

policies, rules, and regulations of the SCHOOL BOARD.

16.     DELGADO chose, and the SCHOOL BOARD approved, to conduct summer football practice in June 2017 when they knew or should have known that, due to the heat and weather conditions in June in Southwest Florida, the football practice they had planned would create an extremely serious risk of harm to ZACHARY and the other players.

17.     Furthermore, DELGADO chose, and the SCHOOL BOARD approved, to conduct such practice in the heat of June in Southwest Florida, without having available ice packs, immersion tubs, or other medical equipment necessary to treat heat-related injuries.

18.     Unfortunately, as the events of June 29, 2017, would unfold, DELGADO consciously violated virtually every standard and regulation issued by the Florida High School Athletic Association (FSHAA) for heat acclimatization, medical emergencies and precautions that should be taken during football practice in hot weather.

19.     RIVERDALE HIGH is a member of the Florida High School Athletic Association that establishes rules, regulations and protocols by which RIVERDALE HIGH and other member high schools are governed.

20.     FHSAA Policy 41 sets forth the requirements for acclimatizing student athletes to the hot weather experienced in Florida.

21.     Pursuant to FHSAA, the purpose and intent of the heat acclimatization requirements of Policy 41 is to "follow a preseason acclimatization and recovery model for all sports that enhances student-athlete well-being." FHSAA Policy 41.2.

22.     Policy 41 provides regulations for conducting preseason practices and recommendations for voluntary workouts to be applied before and during the academic school year. FHSAA Policy 41.2.1 and 41.2.2.

Laurie Giordano vs. Delgado, et al.
Second Amended Complaint

23.     The regulations and recommendations in Policy 41 are the ***minimum standards*** to be followed by high schools and coaches.

24.     The SCHOOL BOARD and DELGADO violated FHSAA Policy 41, by act or omission, in ways including but not limited to the following:

    a.     FHSAA Policy 41.3.2

    i.     Official Practice. An official practice is defined as one continuous period of time in which a participant engages in physical activity. It is required that each practice be no more than three hours (3 hours) in length and consist of no more than 90 minutes of intense exercise. Warm-up, stretching, and cool-down activities are to be included as part of the official practice time. All conditioning and/or weight room activities shall be considered part of the official practice beginning on the first calendar day of official sport season.

    b.     FHSAA Policy 41.4.3

    i.     Acclimatization Period. This policy requires coaches and schools to acclimatize their student-athletes for hot-weather participation in sports activities.

    c.     FHSAA Policy 41.5

    i.     Rest time should involve both unlimited hydration intake and rest without any activity involved.

    ii.     For every 30 minutes of practice, there must be a minimum 5-minute rest and hydration break.

    iii.     The area identified for rest should be considered a "cooling zone" and out of direct sunlight. This area can include ice sponges, cold immersion tubs and other cooling alternatives to facilitate the cooling process.

    iv.     Coaches should promote a heat injury preventions philosophy by promoting unrestricted access to water at all times without consequence.

Laurie Giordano vs. Delgado, et al.
Second Amended Complaint

> v.      A student-athlete **should never be denied** access to water if he/she requests.

25.      The SCHOOL BOARD failed to adopt or enforce proper safety requirements to prevent ZACHARY from suffering from heat exhaustion/stroke during the summer football practice on June 29, 2017, or if they did adopt such safety requirements, adopted a policy or custom of failing to enforce such rules, or of requiring their coaches, such as DELGADO, to follow such requirements.

26.      After ZACHARY arrived at RIVERDALE HIGH at approximately 7:00 a.m. on June 29, 2017, DELGADO subjected ZACHARY to an intense football practice to promote discipline with grossly unreasonable content, length, and timing, beginning at or about 7:00 a.m. and continuing for nearly 4 hours, and concluding with sprints known as "never-ending" sprints while the temperature reached above 90 degrees as is common in June in Southwest Florida.

27.      On information and belief, the SCHOOL BOARD, knew, and approved of such long practices being conducted by DELGADO in the intense heat of June in Southwest Florida.

28.      On information and belief, it is common knowledge among football coaches that the heat is substantially increased, and hydration is required during extensive outdoor exercise in Southwest Florida in June.

29.      During the practice, DELGADO did not properly hydrate ZACHARY and the other players at the football practice during the hot and humid Southwest Florida summer.

30.      Throughout the practice on June 29th, DELGADO failed to provide ZACHARY adequate amounts of water for hydration and further failed to provide ZACHARY adequate medical care on the RIVERDALE HIGH practice field.

31.      Until this point in the practice, DELGADO and the SCHOOL BOARD were negligent for violating for failing to properly hydrate its players, violating nearly all of the FHSAA

Laurie Giordano vs. Delgado, et al.
Second Amended Complaint

standards regarding heat acclimatization, failing to have ice and tubs available, and otherwise

failing to providing a safe environment for ZACHARY and the other players.

32.     DELGADO'S subsequent punitive actions were far more intentional, shocking

and fatal.

33.     Towards the end of the football practice on June 29, 2017, after having endured a

long and grueling 3 hours of practice, DELGADO subjected ZACHARY to unreasonably

dangerous conditioning drills known as "never-ending" sprints to promote discipline and

conditioning.

34.     The "never-ending" sprints required ZACHARY and the other student-athletes to

run sprints that initially increase in yardage up to 100 yards, then decrease in yardage, with only a

few seconds of rest between sprints.

35.     Such drills were conducted in the stifling 90-degree heat of the June day in Lee

County, Florida.

36.     At the time the sprints began, DELGADO had not given ZACHARY and the other

players access to water for nearly 45 minutes.

37.     Each drill required ZACHARY, after having conducted three hours of weightlifting

exercises, running and positional drills, to run sprints without stopping and without hydration

breaks between sprints.

38.     During the drills, ZACHARY and other players showed signs of heat exhaustion,

heat stroke, and dehydration, and pled with DELGADO to allow them to have water.

39.     DELGADO not only denied their pleas for water, but in an effort to punish

ZACHARY and the other players for their request, DELGADO told them he would "kick" them

off the team if the stopped running sprints to get water.

Laurie Giordano vs. Delgado, et al.
Second Amended Complaint

40.     DELGADO was overheard saying to ZACHARY and other players who asked for water, "If you walk off to get water, you walk off the team."

41.     DELGADO'S actions were not simply a failure to provide adequate hydration, nor was it simply an intentional act of depriving ZACHARY of water, DELGADO punished ZACHARY and the other players by withholding water from them until they finished the sprints.

42.     DELGADO made it clear to ZACHARY that if he stopped running sprints long enough to get water, DELGADO would remove him from the team.

43.     DELGADO'S actions were intentional, punitive, shocking given the circumstances, and fatal.

44.     ZACHARY, under the threat of being punished by being removed from the team, continued to run sprints without stopping for water.

45.     Showing obvious signs of heat exhaustion, at the end of the sprints ZACHARY had to be helped by other players to the huddle at the end of practice.

46.     Just after 10:30 a.m. on June 29, 2017, after 3.5 hours of practice, while in the team huddle before DELGADO, ZACHARY collapsed due to heat exhaustion, heat stroke and dehydration and became incoherent.

47.     Even after collapsing, neither DELGADO nor any other adults or coaches rendered aid to ZACHARY for several minutes.

48.     After ZACHARY collapsed, he began convulsing, vomiting and became incoherent, all of which are obvious signs of heat exhaustion and heat stroke.

49.     Even after ZACHARY collapsed and was showing obvious signs of heat stroke and exhaustion, DELGADO failed and refused to call 911 and provided no proper medical attention to ZACHARY.

Laurie Giordano vs. Delgado, et al.
Second Amended Complaint

50.     A player came from the field to inform Plaintiff that her son, ZACHARY, "was down" and Plaintiff made her way to the field with no indication of the crisis.

51.     There she saw ZACHARY collapsed and showing obvious signs of heat stroke and exhaustion. Upon learning that no one had called 911, she demanded DELGADO call 911 which he finally did.

52.     When DELGADO called 911 he intentionally downplayed the severity of the situation and failed to inform the 911 operator that ZACHARY'S condition was urgent, substantially increasing the time it took for EMS to arrive. To the contrary, DELGADO calmly told the 911 operator that ZACHARY was "fine."

53.     The first responders were from Fire & Rescue who arrived at 10:52 a.m., and because they were led to believe there was no emergency, they arrived with no means by which to transport ZACHARY to the hospital.

54.     Fire & Rescue stayed for 21 minutes during which time they provided no lifesaving measures such as the "Cool First, Transport Second" method wherein they would move a person out of the sunshine and into air conditioning, and apply ice packs or immerse a person in a cold-water immersion tub.

55.     Eight (8) minutes later EMS arrived and walked to the field without a stretcher or any type of equipment with which to provide medical attention to ZACHARY.

56.     In a heat stroke, every minute is crucial.

57.     EMS also failed to utilize the "Cool First, Transport Second" method and did not even attempt to cool ZACHARY down.

58.     At the time of his collapse, ZACHARY received no competent medical attention or supervision—even though immediate medical attention is essential for treatment of heat

Laurie Giordano vs. Delgado, et al.
Second Amended Complaint

exhaustion, heat stroke and dehydration.

59.     The SCHOOL BOARD and DELGADO failed to provide ice packs, immersion

tubs or other equipment/supplies by which to treat ZACHARY while awaiting the arrival of EMS.

60.     There was no trainer or health care professional present on the practice fields, as

required or as should be required by football coaching standards, at the time ZACHARY collapsed.

61.     The SCHOOL BOARD had failed to train DELGADO and the other staff and

coaches how to treat players who suffer from heat exhaustion, heat stroke and dehydration.

62.     At the time ZACHARY collapsed on the sideline of the practice field, DELGADO

continued to hold his huddle meeting with the other players within a few feet from ZACHARY

and failed to tend to ZACHARY.

63.     DELGADO continued the team meeting in lieu of tending to the health and well-

being of ZACHARY.

64.     ZACHARY's temperature had risen to 107 degrees and he fell into a heat-induced

coma on the way to the hospital, from which he never recovered consciousness.

65.     For nearly two weeks LAURIE GIORDANO, and ZACHARY'S father watched

their son battle for his life.

66.     ZACHARY died on July 10, 2017 due to complications related to heat

exhaustion/stroke suffered on June 29, 2017.

67.     The death of ZACHARY was caused, without limitation, by the dangerous content,

length, and timing of the RIVERDALE HIGH football practice; the failure to acclimatize

ZACHARY to the hot weather practice; the failure to provide adequate amounts of water for

hydration; the intentional and punitive conduct of DELGADO in withholding water/hydration

from ZACHARY when he and other players complained they needed water; the threat by

Laurie Giordano vs. Delgado, et al.
Second Amended Complaint

DELGADO to punish players should they drink water during the "sprints"; the failure to provide

ZACHARY competent medical attention or supervision on the RIVERDALE HIGH practice field;

the delay of competent medical attention on the practice field due to DELGADO'S failure to notice

the obvious signs of heat stroke/exhaustion ZACHARY  was exhibiting; the dangerous drills required

at the end of practice in 90 degree weather while ZACHARY showed signs of heat exhaustion and urgently

needed water and immediate cooling the failure of DELGADO to respond to ZACHARY and obtain vital

medical treatment; and the callous lack of attention from DELGADO for the health and safety of

ZACHARY.

68.     The extremely dangerous acts and omissions of DELGADO were consciously

permitted due to a lack of, and failure to enforce, safety policies by the SCHOOL BOARD, as

required by law, where the custom of competitive high school football took precedence over and

constituted a deliberate indifference to the health and safety of ZACHARY.

69.     DELGADO's acts, and lack thereof, were not reasonable, and violated

ZACHARY'S clearly established constitutional and statutory rights to be subjected to a safe

environment while at summer football practice and not to be denied basic, known rights, such as

hydration while exercising in the intense Southwest Florida heat in June.

## COUNT I – §1983 CLAIM FOR UNCONSTITUTIONAL
## DEPRIVATION OF LIFE BY DELGADO

70.     Plaintiff re-alleges and re-asserts the allegations in paragraphs 1 through 69 as if

fully set forth herein.

71.     DELGADO was conducting football practice on June 29, 2017, under the color of

Florida state law and owed a constitutional and legal duty to ZACHARY to provide a safe and

adequate football practice environment.

72.     An unusually serious risk of harm to ZACHARY and the other players existed at

Laurie Giordano vs. Delgado, et al.
Second Amended Complaint

the June 29, 2017, summer football practice, given the timing, length and content of the practice

planned by DELGADO.

73.    DELGADO had actual knowledge of this serious risk of harm, but was willfully

blind to the risk and failed to take obvious steps to protect ZACHARY

74.    DELGADO consciously placed fielding a winning football team as more important

than the health and safety of ZACHARY.

75.    DELGADO showed a conscious indifference to, and callous disregard for, the

health and safety of ZACHARY in his operation of the summer football practice on June 29, 2017,

and in their attention to ZACHARY's medical health and safety needs in at least the following

respects:

a.    Punishing ZACHARY by withholding hydration from him for requesting

water during sprints;

b.    Punishing ZACHARY by withholding hydration from him until he finished

sprints;

c.    Conducting an extremely dangerous football practice lasting longer than the

recommended 3 hours;

d.    Conducting an extremely dangerous football practice lasting into the hotter

and more humid hours of the late morning;

e.    Conducting an extremely dangerous football practice that required

ZACHARY to run "never-ending" sprints after nearly 3.5 hours of practice with little to no breaks

between the sprints;

f.    Conducting an extremely dangerous football practice that required the players

to run "never-ending sprints" without having had water for at least 45 minutes;

Laurie Giordano vs. Delgado, et al.
Second Amended Complaint

g.   Conducting an extremely dangerous football practice that required ZACHARY to run "never-ending" sprints after nearly 3.5 hours of practice, and without permitting ZACHARY to drink water during the sprints;

h.   Failing to acclimatize ZACHARY to football practice in the hot and humid Florida summer;

i.   Failing to provide reasonably adequate hydration for ZACHARY during the practice;

j.   Intentionally denying hydration to ZACHARY during the never-ending sprints;

k.   Failing to notice the obvious signs of heat exhaustion/stroke exhibited by ZACHARY;

l.   Failing to provide a reasonably adequate medical care and supervision on the practice field;

m.   Requiring ZACHARY to perform unreasonably dangerous conditioning drills without hydration;

n.   Intentionally denying hydration to ZACHARY and the other players;

o.   Threatening to punish ZACHARY and other players in ZACHARY's presence by kicking them off the team if they got water during the  drills;

p.   Punishing players by forcing all players in the group to repeat sprints when a player was unable to finish or "fell out" while running;

q.   **Violating every one of the FHSAA minimum standards for heat acclimatization and hydration of student-athletes**;

r.   Failing to have a "cooling zone" with ice packs, cold-water immersion tub, or any other method of cooling down student-athletes suffering from heat exhaustion, heat stroke and

Laurie Giordano vs. Delgado, et al.
Second Amended Complaint

dehydration;

      s.    Failing to have a method for he and his staff to ensure student-athletes were properly hydrated;

      t.    Failing to call 911 immediately when ZACHARY began exhibiting signs of heat exhaustion/stroke;

      u.    Failing to inform the 911 operator of the urgency of ZACHARY'S condition and willfully downplaying the severity of ZACHARY'S condition;

      v.    Failing to provide any immediate medical care and supervision to ZACHARY on June 29, 2017, after he became ill on the practice football field and instead holding a team meeting in plain view while ZACHARY was down and in obvious distress;

      w.    Failing to familiarize himself and his staff of the signs of heat exhaustion, dehydration, and heat stroke in student-athletes;

      x.    Failing to familiarize himself and his staff with the methods of treatment of student-athletes suffering from heat exhaustion, heat stroke and dehydration;

      y.    Failing to have any medical staff or trainers on the field during practice;

76.    DELGADO'S conduct, particularly in punishing ZACHARY by denying him hydration, was arbitrary in the sense that he acted in an unrestrained and with absolute power in denying ZACHARY and the other players water, and in fact threatening them with punishment if they drank water during the sprints.

77.    DELGADO's conduct was willful, malicious, and shocking to the conscious in that denying ZACHARY and the other players hydration served no purpose in developing better student-athletes, building a better football team, or for any other legitimate reason, and unreasonably placed them at a risk of serious injury and death.

Laurie Giordano vs. Delgado, et al.
Second Amended Complaint

78.   Furthermore, DELGADO's conduct violated ZACHARY's clearly established statutory right to be safe while participating in a school activity, and his clearly established constitutional right to the protection of life, of which any reasonable person would have known, and as no reasonable football coach would submit student-athletes to an exhausting workout for more than 3 hours in the summer months in Southwest Florida while willfully denying the student-athletes hydration.

79.   DELGADO'S willful and malicious conduct and callous disregard for the health and safety of ZACHARY violated the rights of ZACHARY under ( i ) the laws and Constitution of the United States of America and ( ii ) the laws and Constitution of the State of Florida.

80.   DELGADO'S willful and malicious conduct and callous disregard for the health and safety of ZACHARY was a reasonably foreseeable and proximate cause of ZACHARY'S death, and was a proximate cause of the injuries and damages of ZACHARY and Plaintiff as set forth below.

81.   As a direct and proximate result of DELGADO'S violation of ZACHARY'S constitutional and legal rights, ZACHARY suffered extreme dehydration, heat exhaustion, heat stroke, extreme shock, heart failure, kidney failure, liver failure, brain damage from lack of oxygen, coma and finally death on July 10, 2017.

82.   Plaintiff, LAURIE ALICE GIORDANO, as Personal Representative of the Estate of ZACHARY TYLER MARTIN-POLSENBERG, Deceased, is the duly appointed Personal Representative of the Estate of ZACHARY TYLER MARTIN-POLSENBERG, Deceased. As Personal Representative, this action is brought on behalf of the survivors, as defined by the Florida Wrongful Death Act as follows:

- The Estate of ZACHARY TYLER MARTIN-POLSENBERG, Deceased,

Laurie Giordano vs. Delgado, et al.
Second Amended Complaint

- LAURIE ALICE GIORDANO, Mother of the Deceased,

- JAMES POLSENBERG, Father of the Deceased.

83.    As a direct and proximate result of the Decedent's injuries and death, the

Decedent's parents, LAURIE ALICE GIORDANO and JAMES POLSENBERG, have sustained

the following damages as hereafter set forth:

a.    The loss of services of the deceased from the date of his death, and the future

loss of services and companionship from their son; and, mental pain and suffering in the loss of said

child;

b.    Medical and funeral bills incurred as a result of the death of the decedent.

84.    As a direct and proximate result of the Decedent's, ZACHARY POLSENBERG,

injuries and death, the Estate of the Decedent has sustained the following damages as hereinafter

set forth:

a.    Medical and funeral bills incurred as a result of the death of the decedent;

b.    Net accumulations.

WHEREFORE, Plaintiff, LAURIE ALICE GIORDANO, as Personal Representative of

the Estate of ZACHARY TYLER MARTIN-POLSENBERG, demands judgment for damages

against the Defendant, JAMES DELGADO, individually and in his official capacity, and seeks a

right to trial by jury on all issues, post judgment interest as allowed by law, costs, and she also

demands a trial by jury of all issues so triable.

## COUNT II – §1983 CLAIM FOR
## UNCONSTITUTIONAL DEPRIVATION OF LIFE BY THE SCHOOL BOARD

85.    Plaintiff re-alleges and re-asserts the allegations in paragraphs 1 through 69 as if

fully set forth herein.

86.    The SCHOOL BOARD was conducting and sponsoring the summer football

Laurie Giordano vs. Delgado, et al.
Second Amended Complaint

practice on June 29, 2017, with their corresponding policies, rules and regulations (and lack thereof) under the color of Florida State law.

87.     The SCHOOL BOARD owed a constitutional and legal duty to ZACHARY to provide a safe and adequate football practice environment.

88.     The dangerous policies, rules and regulations (and lack thereof) of the SCHOOL BOARD included, without limitation, the following:

a.     Allowing DELGADO unfettered authority to deny ZACHARY by withholding hydration from him as punishment for requesting water during sprints;

b.     Maintaining inadequate safety policies, rules and regulations for hot weather football practice;

c.     A custom of failing to enforce safety standards for hot weather football practices;

d.     A custom of failing to maintain proper emergency medical procedures on the RIVERDALE HIGH football practice field;

e.     A custom of maintaining a football coaching and training staff that was either unable or unwilling to provide proper safety precautions for hot weather football practice;

f.     A custom, practice or policy of failing to provide immersion tubs and other medical/safety equipment to treat ZACHARY while awaiting the arrival of EMS;

g.     A custom, practice or policy of failing to enforce the FHSAA minimum standards related to heat acclimatization and hydration of student-athletes;

h.     A custom of maintaining a football coaching and training staff that was not only unfamiliar with safety precautions related to hot weather football practice, but also actually denied ZACHARY and other players hydration and cooling zones (shaded areas) for breaks during

Laurie Giordano vs. Delgado, et al.
Second Amended Complaint

football practice in 90-degree weather; and

       i.   A custom of emphasizing football training and victories over the safety and well-being of its student-athletes.

89.    The customs and policies listed without limitation above were so persistent, widespread, common, and well-settled on June 29, 2017, that they in themselves represented the official policies, rules, and regulations of the SCHOOL BOARD.

90.    The dangerous policies, rules, regulations and customs of the SCHOOL BOARD violated and constituted a willful and malicious indifference to the rights of ZACHARY under (i) the laws and Constitution of the United States of America and (ii) the laws and Constitution of the State of Florida.

91.    The dangerous policies, rules, regulations and customs of the SCHOOL BOARD and violations of ZACHARY's legal and constitutional rights were a reasonably foreseeable and proximate cause of the death of ZACHARY, and were a proximate cause of the injuries and damages of ZACHARY and the Plaintiff.

92.    As a direct and proximate result of the SCHOOL BOARD'S violations of ZACHARY's constitutional and legal rights, ZACHARY suffered extreme dehydration, heat exhaustion, heat stroke, extreme shock, heart failure, kidney failure, liver failure, brain damage from lack of oxygen, coma, and finally death on July 10, 2017.

93.    Plaintiff, LAURIE ALICE GIORDANO, as Personal Representative of the Estate of ZACHARY TYLER MARTIN-POLSENBERG, Deceased, is the duly appointed Personal Representative of the Estate of ZACHARY TYLER MARTIN-POLSENBERG, Deceased. As Personal Representative, this action is brought on behalf of the survivors, as defined by the Florida Wrongful Death Act as follows:

Laurie Giordano vs. Delgado, et al.
Second Amended Complaint

      a.     The Estate of ZACHARY TYLER MARTIN-POLSENBERG, Deceased,

      b.     LAURIE ALICE GIORDANO, Mother of the Deceased,

      c.     JAMES POLSENBERG, Father of the Deceased.

94.    As a direct and proximate result of the Decedent's injuries and death, the Decedent's parents, LAURIE ALICE GIORDANO and JAMES POLSENBERG, have sustained the following damages as hereafter set forth:

      a.     The loss of services of the deceased from the date of his death, and the future loss of services and companionship from their son; and, mental pain and suffering in the loss of said child;

      b.     Medical and funeral bills incurred as a result of the death of the decedent.

95.    As a direct and proximate result of the ZACHARY'S, injuries and death, the Estate of the Decedent has sustained the following damages as hereinafter set forth:

      a.     Medical and funeral bills incurred as a result of the death of the decedent;

      b.     Net accumulations.

WHEREFORE, Plaintiff, LAURIE ALICE GIORDANO, as Personal Representative of the Estate of ZACHARY TYLER MARTIN-POLSENBERG, demands judgment for damages against the Defendant, THE SCHOOL BOARD OF LEE COUNTY, FLORIDA, and seeks a right to trial by jury on all issues, post judgment interest as allowed by law, costs, and she also demands a trial by jury of all issues so triable.

## <u>COUNT III – NEGLIGENCE BY DELGADO</u>

96.    Plaintiff re-alleges and re-asserts the allegations in paragraphs 1 through 69 as if fully set forth herein.

97.    As head coach of the football team and in charge of the summer football practice

Laurie Giordano vs. Delgado, et al.
Second Amended Complaint

on June 29, 2017, DELGADO owed a duty to ZACHARY to use ordinary care, including the duty

to protect and safeguard ZACHARY from unreasonably dangerous conditions during the June 29,

2017 football practice.

98.     On June 29, 2017, DELGADO was negligent in at least the following respects:

a.     Conducting an unreasonably dangerous football practice in terms of ( i ) the

length of the practice; ( ii ) the timing of the practice; and ( iii ) the content of the practice.

b.     Failing to acclimatize ZACHARY to football practice in the hot and humid

Florida summer;

c.     Failing to provide reasonably adequate medically-trained supervision on the

practice field;

d.     Failing to provide adequate hydration for ZACHARY;

e.     Denying ZACHARY hydration when he requested same during the "gasser"

drills;

f.     Failing to recognize the obvious signs of heat exhaustion/stroke ZACHARY

was exhibiting;

g.     Requiring ZACHARY to perform unreasonably repetitive and dangerous

"gasser" conditioning drills;

h.     Failing to call 911 and properly inform the 911 operator of the urgency of

ZACHARY'S condition; and

i.     Failing to provide any immediate medical care and supervision to ZACHARY

on June 29, 2017, after he became ill on the practice football field and instead holding a team

meeting in plain view while ZACHARY was down.

99.     Each of the foregoing negligent acts and omissions, whether taken singularly or in

Laurie Giordano vs. Delgado, et al.
Second Amended Complaint

any combination, was a proximate cause of ZACHARY's death and was a proximate cause of the injuries and damages of ZACHARY and Plaintiff as set forth below.

100.    As a direct and proximate result of DELGADO'S negligence, ZACHARY suffered extreme dehydration, heat exhaustion, heat stroke, extreme shock, heart failure, kidney failure, liver failure, brain damage from lack of oxygen, coma, and finally death on July 10, 2017.

101.    Plaintiff, LAURIE ALICE GIORDANO, as Personal Representative of the Estate of ZACHARY TYLER MARTIN-POLSENBERG, Deceased, is the duly appointed Personal Representative of the ZACHARY TYLER MARTIN-POLSENBERG, Deceased. As Personal Representative, this action is brought on behalf of the survivors, as defined by the Florida Wrongful Death Act as follows:

- The Estate of ZACHARY TYLER MARTIN-POLSENBERG, Deceased,

- LAURIE ALICE GIORDANO, Mother of the Deceased,

- JAMES POLSENBERG, Father of the Deceased.

102.    As a direct and proximate result of the Decedent's injuries and death, the Decedent's parents, LAURIE ALICE GIORDANO and JAMES POLSENBERG, have sustained the following damages as hereafter set forth:

a.    The loss of services of the deceased from the date of his death, and the future loss of services and companionship from their son; and, mental pain and suffering in the loss of said child;

b.    Medical and funeral bills incurred as a result of the death of the decedent.

103.    As a direct and proximate result of the ZACHARY'S, injuries and death, the Estate of the Decedent has sustained the following damages as hereinafter set forth:

a.    Medical and funeral bills incurred as a result of the death of the decedent;

Laurie Giordano vs. Delgado, et al.
Second Amended Complaint

      b.     Net accumulations.

WHEREFORE, Plaintiff, LAURIE ALICE GIORDANO, as Personal Representative of the Estate of ZACHARY TYLER MARTIN-POLSENBERG, demands judgment for damages against the Defendant, JAMES DELGADO, individually and in his official capacity, and seeks a right to trial by jury on all issues, post judgment interest as allowed by law, costs, and he also demands a trial by jury of all issues so triable.

## COUNT IV – NEGLIGENCE BY THE SCHOOL BOARD

104.     Plaintiff re-alleges and re-asserts the allegations in paragraphs 1 through 69 as if fully set forth herein.

105.     Plaintiff has complied with all conditions precedent of Section 768.28 Fla. Stat., including providing timely written notice to the Florida Department of Insurance as well as to the School Board of Lee County pursuant to Section 768.28(6)(a) Fla. Stat., prior to filing this action. A copy of the same is attached hereto as Exhibit "A".

106.     At all times material hereto, the SCHOOL BOARD was acting through its agents, employees, coaches, including but not limited to DELGADO.

107.     The SCHOOL BOARD was conducting and sponsoring the summer football practice on June 29, 2017, with their corresponding policies, rules and regulations (and lack thereof) under the color of Florida State law.

108.     The SCHOOL BOARD owed a legal duty to ZACHARY to provide a safe and adequate football practice environment.

109.     The dangerous policies, rules and regulations (and lack thereof) of the SCHOOL BOARD included, without limitation, the following:

      a.     Maintaining inadequate safety policies, rules and regulations for hot weather

Laurie Giordano vs. Delgado, et al.
Second Amended Complaint

football practice;

     b.   A custom of failing to enforce safety standards for hot weather football practices;

     c.   A custom of failing to maintain proper emergency medical procedures on the RIVERDALE HIGH football practice field;

     d.   A custom of maintaining a football coaching and training staff that was either unable or unwilling to provide proper safety precautions for hot weather football practice;

     e.   A custom, practice or policy of failing to provide immersion tubs and other medical/safety equipment to treat ZACHARY while awaiting the arrival of EMS;

     f.   A custom of maintaining a football coaching and training staff that was not only unfamiliar with safety precautions related to hot weather football practice, but also actually denied ZACHARY and other players hydration in football practice in 90-degree weather; and

     g.   A custom of emphasizing football training and victories over football safety.

110.    The customs listed without limitation above were so persistent, widespread, common, and well-settled on June 29, 2017, that they in themselves represented the official policies, rules, and regulations of the SCHOOL BOARD.

111.    The dangerous policies, rules, regulations and customs of the SCHOOL BOARD were a reasonably foreseeable and proximate cause of the death of ZACHARY and were a proximate cause of the injuries and damages of ZACHARY and the Plaintiff.

112.    As a direct and proximate result of the SCHOOL BOARD'S negligence, ZACHARY suffered extreme dehydration, heat exhaustion, heat stroke, extreme shock, heart failure, kidney failure, liver failure, brain damage from lack of oxygen, coma, and finally death on July 10, 2017.

Laurie Giordano vs. Delgado, et al.
Second Amended Complaint

113.    Plaintiff, LAURIE ALICE GIORDANO, as Personal Representative of the Estate of ZACHARY TYLER MARTIN-POLSENBERG, Deceased, is the duly appointed Personal Representative of the Estate of ZACHARY TYLER MARTIN-POLSENBERG, Deceased. As Personal Representative, this action is brought on behalf of the survivors, as defined by the Florida Wrongful Death Act as follows:

       a.    The Estate of ZACHARY TYLER MARTIN-POLSENBERG, Deceased,

       b.    LAURIE ALICE GIORDANO, Mother of the Deceased,

       c.    JAMES POLSENBERG, Father of the Deceased.

114.    As a direct and proximate result of the Decedent's injuries and death, the Decedent's parents, LAURIE ALICE GIORDANO and JAMES POLSENBERG, have sustained the following damages as hereafter set forth:

       a.    The loss of services of the deceased from the date of his death, and the future loss of services and companionship from their son; and, mental pain and suffering in the loss of said child;

       b.    Medical and funeral bills incurred as a result of the death of the decedent.

115.    As a direct and proximate result of the ZACHARY'S, injuries and death, the Estate of the Decedent has sustained the following damages as hereinafter set forth:

       a.    Medical and funeral bills incurred as a result of the death of the decedent;

       b.    Net accumulations.

WHEREFORE, Plaintiff, LAURIE ALICE GIORDANO, as Personal Representative of the Estate of ZACHARY TYLER MARTIN-POLSENBERG, demands judgment for damages against the Defendant, THE SCHOOL BOARD OF LEE COUNTY, FLORIDA, and seeks a right to trial by jury on all issues, post judgment interest as allowed by law, costs, and she also demands

Laurie Giordano vs. Delgado, et al.
Second Amended Complaint

a trial by jury of all issues so triable.

## COUNT V - WRONGFUL DEATH NEGLIGENCE V. LEE COUNTY EMS

116.     Plaintiff re-alleges and re-asserts the allegations in paragraphs 1 through 69 as if fully set forth herein.

117.     At all times material, the Defendant, LEE COUNTY EMS through LEE COUNTY, a Political Subdivision of the State of Florida, (hereinafter referred to as "LEE COUNTY EMS"), was licensed and doing business in Lee County, Florida, and provided transport and medical care to ZACHARY T. MARTIN- POLSENBERG in Lee County, Florida, on June 29, 2017.

118.     That at the time of their arrival, at 10:55 a.m., Defendant's, LEE COUNTY EMS, personnel were aware that there had been no ice tank available for ZACHARY T. MARTIN-POLSENBERG, and that they were not using cold water in an attempt to cool him down as a result of his obvious heat stroke.

119.     That Defendant, LEE COUNTY EMS, had no ice, cooling devices, or other reasonable methods available to appropriately treat heat stroke during transport.

120.     That at the time of initial contact with ZACHARY T. MARTIN-POLSENBERG, at 10:57 a.m., Defendant's, LEE COUNTY EMS, personnel should have realized that ZACHARY T. MARTIN-POLSENBERG needed emergent care, but nonetheless failed to provide him such emergent care.

121.     In transporting him to hospital care, they bypassed the closest hospitals, instead transporting ZACHARY T. MARTIN-POLSENBERG to Golisano Children's Hospital, which was 24.7 miles away, at least twice as far as the nearest available hospital.

122.     As a result of his obvious critical condition, ZACHARY T. MARTIN-

Laurie Giordano vs. Delgado, et al.
Second Amended Complaint

POLSENBERG's transport should have been treated as an emergency and taken to the nearest

Emergency Room, Lehigh Regional Medical Center, which was only 10.4 miles away.

123.    At the time of Defendant's, LEE COUNTY EMS, belated arrival to Golisano

Children's Hospital, ZACHARY T. MARTIN-POLSENBERG was unresponsive, tachycardic,

and his temperature was 107 degrees.

124.    As a direct and proximate result of the undue transport delay in receiving timely

and appropriate hospital and cooling treatment, ZACHARY T. MARTIN-POLSENBERG's heat

stroke worsened, and he never recovered and died on July 10, 2017.

125.    That all conditions precedent to bringing this lawsuit have been met, including

waiting the requisite pre-suit periods, pursuant to Florida Statute 768.28.

126.    At all times material, the Defendant, LEE COUNTY EMS, by and through its

agents and employees, including its emergency technicians and staff, owed a duty of reasonable

care to provide reasonable transport and emergency services to ZACHARY T. MARTIN-

POLSENBERG, on June 29, 2017.

127.    That Defendant, LEE COUNTY EMS, negligently and carelessly breached its duty

of care, in one or more of the following ways, any one of which was a departure from and fell

below the prevailing reasonable standard of care:

a.      failed to treat ZACHARY T. MARTIN-POLSENBERG's heat stroke as an

emergency;

b.      failed to transport ZACHARY T. MARTIN-POLSENBERG to the closest

hospital;

c.      failed to provide adequate ice, cooling devices, or other methods to treat heat

stroke during transport;

d.      bypassed the closest hospital, Lehigh Regional Medical Center, at 10.4 miles

Laurie Giordano vs. Delgado, et al.
Second Amended Complaint

away, to transport ZACHARY T. MARTIN-POLSENBERG to Golisano Children's Hospital,

24.7 miles away across town, resulting in a critical delay in appropriate hospital treatment;

    e.    that despite realizing they did not have adequate cooling devices, or

methods available to appropriately treat ZACHARY T. MARTIN-POLSENBERG's heat stroke,

Defendant, LEE COUNTY EMS, negligently determined to transport him to Golisano Children's

Hospital, without concern for his emergent need for hospital care.

128.    LEE COUNTY EMS's conduct above demonstrated a reckless disregard for the

consequences to ZACHORY, and ultimately causing in part, ZACHORY's death.

129.    As a direct and proximate result, ZACHARY T. MARTIN-POLSENBERG

suffered an undue delay in hospital treatment and cooling, worsening his heat stroke, and

substantially contributing to his death.

130.    As a further direct and proximate result, Plaintiff, LAURIE A. GIORDANO, as

Personal Representative of the Estate of ZACHARY T. MARTIN-POLSENBERG, has suffered

the following damages:

    a.    medical and funeral expenses that have been charged against the Estate of

ZACHARY T. MARTIN-POLSENBERG, or that were paid by or on behalf of the Decedent;

    b.    net accumulations.

131.    That in addition to the Estate, the Decedent, ZACHARY T. MARTIN-

POLSENBERG, left surviving the following beneficiaries who are eligible to recover for his

wrongful death under the Florida Wrongful Death Act:

- LAURIE A. GIORDANO..........NATURAL MOTHER - ADULT

- JAMES POLSENBERG. ............NATURAL FATHER - ADULT

132.    As a further direct and proximate result of the negligence of the Defendant, LEE

Laurie Giordano vs. Delgado, et al.
Second Amended Complaint

COUNTY EMS, the surviving beneficiaries, as outlined above, have suffered the following

damages:

      a.    the value of loss, support and services from the date of death and into the future;

      b.    mental pain and suffering from the date of death and into the future;

      c.    loss of Decedent's companionship and protection, and the Survivors' mental pain and suffering from the date of death and into the future;

      d.    medical and funeral bills paid by the survivor;

      e.    all damages allowed under the Florida Wrongful Death Act;

WHEREFORE, Plaintiff, LAURIE A. GIORDANO, as Personal Representative of the

Estate of ZACHARY T. MARTIN-POLSENBERG, sues the Defendant, LEE COUNTY EMS, by

and through LEE COUNTY, a Political Subdivision of the STATE OF FLORIDA, and demands

judgment for compensatory damages, costs in this action and trial by jury.

## JURY DEMAND

133.    Plaintiff hereby demands a trial by jury for all issues in which a jury trial is

permitted by law.

WHEREFORE, the Plaintiff prays that the Defendants be duly summoned to appear and

answer herein, and that on final trial hereof, Plaintiff have judgment of the Court against the

Defendants as follows:

      a.    Damages proven at trial for the pain, suffering, and loss of life of ZACHARY, in an amount to be proven at trial given the facts and circumstances of the case;

      b.    Damages proven at trial for loss of value of emotional support, society, care, advice, attention, comfort, counsel, love, and affections, of which the Plaintiff has been denied due to the untimely, unfortunate and wrongful death of their

Laurie Giordano vs. Delgado, et al.
Second Amended Complaint

        son;

    c.    Damages proven at trial for the loss of net accumulations;

    d.    Damages proven at trial for the reasonable costs of medical, funeral and burial expenses resulting from this tragedy for which Plaintiff was required to pay;

    e.    Exemplary damages in such an amount as may be found proper and just under the facts and circumstances of this case as determined by the Court or jury;

    f.    Reasonable attorney fees and costs proven at trial as allowed by Federal law;

    g.    Interest on Judgment; and

    h.    Such other and further relief, both general and special, at law and in equity, to which Plaintiff is entitled.

## <u>CERTIFICATE OF SERVICE</u>

    **I HEREBY CERTIFY** that I electronically filed the foregoing document with the Clerk of Court using CM/ECF on this 22nd day of November 2019.  I also certify that the foregoing document was served this day on all counsel of record or pro se parties identified on the service list below in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing on this 22nd day of November  2019.

| | |
|---|---|
| Richard B. Akin, II, Esq. | L. Chuck Lira, Esq. |
| Kyle Dudek, Esq. | Lee County Attorney's Office |
| Henderson, Franklin, Starnes & Holt, P.A. | *Counsel for Lee County EMS, by and through* |
| *Counsel for The School Board of Lee County,* | *Lee County, a Political Subdivision of the State* |
| *Florida; Gregory K. Adkins, Ed.D, as* | *of Florida* |
| *Superintendent of School District of Lee* | 2115 Second Street |
| *County and James Delgado* | Fort Myers, FL 33902 |
| 1715 Monroe Street | Telephone:  (239) 533-2236 |
| Fort Myers, FL 33902 | trialsection@leegov.com |
| Telephone:  (239) 344-1182 | |
| Richard.akin@henlaw.com | |
| Brenda.sitar@henlaw.com | |
| kdudek@henlaw.com | |

Laurie Giordano vs. Delgado, et al.
Second Amended Complaint

Terry S. Nelson, Esq.
Terry S. Nelson, P.A.
*Co-Counsel for Plaintiff*
First Street Center
2401 First Street, Suite 102
Fort Myers, FL 33901
Telephone: (239) 334-1789
Facsimile:  (239) 334-4589
tnelson@terrynelsonlaw.com
dcutler@terrynelsonlaw.com

James L. Holloway, III, Esq.
Lee County Attorney's Office
*Co-Counsel for Lee County*
P.O. Box 398
Fort Myers, FL 33902-0398
Telephone:  (239) 533-2236
trialsection@leegov.com

Respectfully submitted,
**ALOIA, ROLAND, LUBELL & MORGAN, PLLC**
*Attorneys for Plaintiff*
2222 Second Street
Fort Myers, FL 33901
Telephone: (239) 791-7950
Facsimile:  (239) 791-7951
troland@floridalegalrights.com
elubell@floridalegalrights.com
jmorgan@floridalegalrights.com
personalinjuryservice@floridalegalrights.com

By:   */s/ Jack C. Morgan, III*
     **Ty G. Roland**
     Florida Bar No.:  0069639
     **Evan D. Lubell**
     Florida Bar No.: 0046426
     **Jack C. Morgan, III**
     Florida Bar No.: 0126527