UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

LAURIE ALICE GIORDANO, individually, and as Personal Representative of the Estate of ZACHARY TYLER MARTIN-POLSENBERG,

    Plaintiff,

v.                        Case No: 2:19-cv-439-FtM-99NPM

THE SCHOOL BOARD OF LEE COUNTY, FLORIDA, JAMES DELGADO, Individually and in his official capacity, and LEE COUNTY EMS, through LEE COUNTY, a Political Subdivision of the State of Florida,

    Defendants.

___

**OPINION AND ORDER**

Before the Court is the School Board of Lee County and James Delgado's Motion to Dismiss Counts I and II brought pursuant to 42 U.S.C. § 1983 (Doc. #54) filed on November 25, 2019, and plaintiff's Response in Opposition (Doc. #58). For the reasons set forth below, the Motion is granted.

**I.**

This case involves the tragic death of a Riverdale High School football player following summer football practice. Together with claims for negligence and wrongful death, plaintiff Laurie Alice

Giordano individually and on behalf of the estate of her son, Zachary Tyler Martin-Polsenberg, brings two claims under 42 U.S.C. § 1983 against defendants James Delgado and the School Board of Lee County ("defendants") for alleged violations of Zachary's substantive due process rights under the Fourteenth Amendment to the United States Constitution. In short, plaintiff alleges that Coach Delgado and the School Board's actions constituted a deliberate indifference to the health and safety of Zachary.

The Court previously dismissed the substantive due process claims, finding that plaintiff failed to allege that Zachary had a custodial relationship with defendants at a voluntary summer football practice and that no conscience-shocking constitutional violations occurred under Eleventh Circuit precedent. (Doc. #50.) Because the Court declined to exercise supplemental jurisdiction over the state law claims, it did not address the remaining state law claims. The Court provided plaintiff with a final opportunity to file an amended complaint setting forth federal claims.

On November 22, 2019, plaintiff filed a Second Amended Complaint (Doc. #53). Defendants move to dismiss, arguing that plaintiff still fails to allege an underlying constitutional violation and defendants are otherwise entitled to qualified immunity. Plaintiff responds that the Second Amended Complaint alleges facts sufficient to state a constitutional claim.

The Second Amended Complaint (Doc. #53) alleges as follows: At around 7:00 a.m. on the morning of June 29, 2017, Zachary arrived at Riverdale High School for summer football practice. The School Board and Coach Delgado chose to conduct summer football practice in Southwest Florida when they knew that the heat would cause an extreme risk of harm to Zachary. Although the rules, regulations, and protocols of the Florida High School Athletic Association (FHSAA) (of which Riverdale High is a member) provide the minimum standards and regulations for heat acclimatization, medical emergencies, and precautions that should be taken in hot weather, Delgado and the School Board failed to adopt or enforce such minimum safety requirements. Plaintiff alleges that such safety standards include ice packs, immersion tubs, or other medical equipment necessary to treat heat-related injuries.

During the morning of June 29, 2017, Delgado subjected Zachary to an intense football practice to promote discipline with grossly unreasonable content and length (4 hours). The practice concluded with sprints known as "never-ending" sprints while the temperatures reached above 90 degrees. The never-ending sprints required Zachary and the other players to run sprints that initially increased in yardage up to 100 yards, then decreased in yardage, with only a few seconds of rest between sprints. At the time the sprints began, Coach Delgado had not given Zachary and the other plays access to water for nearly 45 minutes. Throughout

the practice, Coach Delgado did not properly hydrate Zachary and others, and did not provide adequate medical care, violating nearly all the FHSAA standards.

During the drills, Zachary and other players showed signs of heat exhaustion, heat stroke, and dehydration, and pled with Delgado to allow them to have water. Coach Delgado not only denied their pleas for water, but in an effort to punish Zachary and other players for their requests, Coach Delgado told them he would kick them off the team if they stopped running sprints to get water. Plaintiff states that Coach Delgado's actions were not simply a failure to provide adequate hydration, nor simply an intentional act of depriving Zachary of water, but that Coach Delgado punished Zachary and other players by withholding water until they finished the sprints.

Showing obvious signs of heat exhaustion, at the end of the sprints, Zachary had to be helped by other players to the huddle. Just after 10:30 a.m., Zachary collapsed and began convulsing, vomiting, and became incoherent, all obvious signs of heat exhaustion, heat stroke, and dehydration that were ignored. Even after Zachary collapsed, Coach Delgado continued to hold his other huddle meeting with other players and failed and refused to call 911 and provided no proper medical attention to Zachary. There was no trainer or other health care professional present on the practice fields at the time Zachary collapsed.

A player came from the field to inform Zachary's mother (plaintiff) that her son "was down" and plaintiff made her way to the field with no indication of the crisis. When she saw Zachary collapsed, she demanded Coach Delgado call 911. When Coach Delgado called 911 he intentionally downplayed the severity of the situation, told the 911 operator that Zachary was fine, substantially increasing the time it took for EMS to arrive. While waiting for EMS to arrive, the School Board and Coach Delgado failed to provide ice packs, immersion tubs, or other equipment to treat Zachary.

First Responders arrived at 10:52 a.m., and because they were led to believe there was no emergency, they arrived with no means to transport Zachary to the hospital. First Responders did not provide any lifesaving measures such as the "cool first, transport second" method wherein they would move a person out of the sun and into air conditioning and apply ice packs or immerse a person in a cold-water immersion tub. Eight minutes later, EMS arrived and walked to the field without a stretcher or any type of equipment to provide medical attention to Zachary.

Zachary's temperature had risen to 107 degrees and he fell into a heat-induced coma on the way to the hospital, from which he never regained consciousness. Zachary died on July 10, 2017 due to complications related to heat exhaustion/stroke suffered on June 29, 2017.

As for the federal claims under 42 U.S.C. § 1983 for "unconstitutional deprivation of life", plaintiff alleges that Coach Delgado violated Zachary's clearly established and statutory rights to a safe environment while at summer football practice and not to be denied basic, known rights, such as hydration while exercising in the intense Southwest Florida heat in June. (Doc. #53, ¶ 69.) Plaintiff alleges that Coach Delgado showed a conscious indifference to, and a callous disregard for, the health and safety of Zachary and a deliberate inattention to Zachary's medical and safety needs, violating FHSAA minimum standards (among other reasons listed at paragraph 75 of the Second Amended Complaint). (Doc. #53, ¶ 75.) Plaintiff alleges that Coach Delgado was punishing Zachary by denying him hydration and acted in an unrestrained manner and with absolute power, and in fact threatened the players with punishment if they drank water during sprints – amounting to conduct that shocks the conscience.

The School Board is also included because it conducted and sponsored the summer football practice, approved of this conduct, and maintained "dangerous policies, rules, and regulations" that neglected student safety. (Doc. #53, ¶ 86.)

**II.**

Under Federal Rule of Civil Procedure 8(a)(2), a Complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

This obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citation omitted). To survive dismissal, the factual allegations must be "plausible" and "must be enough to raise a right to relief above the speculative level." Id. at 555. See also Edwards v. Prime Inc., 602 F.3d 1276, 1291 (11th Cir. 2010). This requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations omitted).

In deciding a Rule 12(b)(6) motion to dismiss, the Court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff, Erickson v. Pardus, 551 U.S. 89 (2007), but "[l]egal conclusions without adequate factual support are entitled to no assumption of truth." Mamani v. Berzain, 654 F.3d 1148, 1153 (11th Cir. 2011) (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. "Factual allegations that are merely consistent with a defendant's liability fall short of being facially plausible." Chaparro v. Carnival Corp., 693 F.3d 1333, 1337 (11th Cir. 2012) (internal citations omitted). Thus, the Court engages in a two-step approach: "When there are well-pleaded factual allegations, a court should assume their veracity and then

determine whether they plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679.

## III.

Section 1983 imposes liability on any person who, under color of state law, deprives a person "of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. To state a claim under 42 U.S.C. § 1983, a plaintiff must allege "(1) that the defendant deprived [the plaintiff] of a right secured under the Constitution or federal law and (2) that such deprivation occurred under color of state law." Arrington v. Cobb Cty., 139 F.3d 865, 872 (11th Cir. 1998). A local government may be held liable under § 1983 only "if the plaintiff shows that a 'custom' or 'policy' of the municipality was the 'moving force' behind the constitutional deprivation." Sewell v. Town of Lake Hamilton, 117 F.3d 488, 489 (11th Cir. 1997) (citing Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690–94 (1978)). The government entity "must be found to have itself caused the constitutional violation at issue; it cannot be found liable on a vicarious liability theory." Skop v. City of Atlanta, 485 F.3d 1130, 1145 (11th Cir. 2007) (citing Monell, 436 U.S. at 694–95).

Defendants assert that plaintiff's § 1983 claims against Coach Delgado and the School Board fail because (1) there is no underlying constitutional violation and, (2) if there is an underlying constitutional violation, Coach Delgado is entitled to

qualified immunity. Plaintiff responds that taking all of the factual circumstances into account, plaintiff has plausibly alleged that Zachary was deprived of his life through the intentional and conscience shocking conduct of Coach Delgado, and the jury should be permitted to hear the evidence and determine for themselves whether Coach Delgado's conduct was conscience shocking.

The Court first determines whether there is an underlying constitutional violation. Because there is no underlying constitutional violation, there is no need to discuss remaining issues.

**A. Underlying Constitutional Violation**

The Fourteenth Amendment prohibits States and their components from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "[T]he Due Process Clause was intended to prevent government officials from abusing their power, or employing it as an instrument of oppression." Cty. of Sacramento v. Lewis, 523 U.S. 833, 846 (1998) (internal citations omitted). The substantive component of the Due Process Clause "protects individual liberty against 'certain government actions regardless of the fairness of the procedures used to implement them.'" Collins v. City of Harker Heights, 503 U.S. 115, 125 (1992) (quoting Daniels v. Williams, 474 U.S. 327, 331 (1986)). Accordingly, the Fourteenth Amendment

must not be used through § 1983 as a "font for tort law" to convert state tort claims into federal causes of action. Waddell v. Hendry Cty. Sheriff's Office, 329 F.3d 1300, 1305 (11th Cir. 2003). "Nothing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors. The Clause is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security." DeShaney v. Winnebago Cnty. Dep't of Soc. Servs., 489 U.S. 189, 195 (1989).

Only in certain limited circumstances does the Constitution impose affirmative duties of care on the state. Doe v. Braddy, 673 F.3d 1313, 1318 (11th Cir. 2012). As originally defined by the Supreme Court, those circumstances exist where (1) the state takes a person into custody, confining him against his will, and (2) when the state creates the danger or renders a person more vulnerable to an existing danger. DeShaney, 489 U.S. at 198–201. The "state-created danger" exception has since been replaced by the standard employed by the Supreme Court in Collins, 503 U.S. at 128. Waddell, 329 F.3d at 1305. Now, the government's affirmative acts "rise to the level of a substantive due process violation [when] the act can be characterized as arbitrary or conscience shocking in a constitutional sense." Id. (citing Collins, 503 U.S. at 128).

### 1. Duty Created by a Custodial Relationship

"A duty of protection can arise where the state has a custodial relationship with the individual, arising from such circumstances as incarceration in prison or involuntary commitment in a mental institution." Davis v. Carter, 555 F.3d 979, 982 n.2 (11th Cir. 2009) (citing DeShaney, 489 U.S. at 198–99). Mere compulsory attendance at a public school does not give rise to a constitutional duty of protection under the Due Process Clause because public schools generally lack the requisite control over children to impose such a duty of care upon these institutions. Id. (citing Wright v. Lovin, 32 F.3d 538, 540 (11th Cir. 1994)). See also Wyke v. Polk Cty. Sch. Bd., 129 F.3d 560, 569 (11th Cir. 1997). Like the Eleventh Circuit, "each circuit to have addressed the issue has concluded that public schools do not have a special relationship with their students, as public schools do not place the same restraints on students' liberty as do prisons and state mental health institutions." Doe ex rel. Magee v. Covington Cty. Sch. Dist. ex rel Keys, 675 F.3d 849, 858 (5th Cir. 2012) (citing cases).

The Eleventh Circuit has been "explicit in stating that 'deliberate indifference' is insufficient to constitute a due-process violation in a non-custodial setting." Davis, 555 F.3d at 983 (quoting Nix v. Franklin Cty. Sch. Dist., 311 F.3d 1373, 1377 (11th Cir. 2002)). The Eleventh Circuit's opinion in Davis,

555 F.3d 979, is particularly instructive here. In that case, the court found that because student Tyler Davis voluntarily participated in a workout session for the high school football team — an extracurricular after-school activity — no custodial relationship existed between himself and the school. The Court reaches the same result here. Plaintiff has failed to plausibly allege that Zachary had a custodial relationship with defendants at a voluntary summer football practice.

**2. Conduct that Shocks the Conscience**

Under the second exception, a constitutional violation may be present if the conduct of the governmental actor "shocks the conscience." "To rise to the conscience-shocking level, conduct most likely must be 'intended to injure in some way unjustifiable by any government interest.'" Davis, 555 F.3d at 982 (quoting Lewis, 523 U.S. at 849). Conduct by a government actor that would amount to an intentional tort under state law would not, without more, rise to the level of the constitutional violation. See Dacosta v. Nwachukwa, 304 F.3d 1045, 1048 (11th Cir. 2002). "[O]nly the most egregious official conduct can be said to be arbitrary in the constitutional sense." Waddell, 329 F.3d at 1305.

In the educational setting, the Eleventh Circuit has found conscious-shocking conduct in only two cases — both involving excessive corporal punishment. In Neal v. Fulton County Board of

Education, 229 F.3d 1069 (11th Cir. 2000), a high school coach intentionally struck a student with a metal weight lock, knocking the student's eye out of its socket, as a form of punishment for his involvement in a fight with another student. Id. at 1071. The Eleventh Circuit concluded that the coach's conduct rose to the level of a constitutional violation because a school official "intentionally us[ed] an obviously excessive amount of force that presented a reasonably foreseeable risk of serious bodily injury." Id. at 1076. In reaching its conclusion, the Eleventh Circuit made clear that the claims of excessive corporal punishment shaped the outcome. Id. Similarly, the Eleventh Circuit concluded in Kirkland v. Greene Cty. Bd. of Educ., 347 F.3d 903 (11th Cir. 2003), that a high school principal violated a student's constitutional rights after he struck the student with a metal cane in the head, ribs, and back for disciplinary reasons. Id. at 904-05.

By contrast, no conscience-shocking constitutional violations occurred in Nix v. Franklin Cty. Sch. Dist., 311 F.3d 1373 (11th Cir. 2002), or Davis v. Carter, 555 F.3d 979 (11th Cir. 2009). In Nix, a high school teacher told his students to hold a live wire during a voltage-reading demonstration in his electromechanical class. Nix, 311 F.3d at 1374. The teacher warned his students that they might die if they accidently touched the exposed part of the wire. Id. The teacher increased the power to the wire, then

turned away to answer a question.  Id.  When the teacher turned back to the students, he saw that one student had touched the wire and was gasping for breath.  Id.  After the student died, his parents brought a § 1983 suit and alleged that "the actions of the defendants 'were particularly arbitrary, reckless, and deliberately indifferent.'"  Id. at 1376.  The Eleventh Circuit, in concluding that the student's substantive due process rights were not violated, emphasized that mere negligence is insufficient to sustain a constitutional claim, while actions intended to injure and that are unrelated to any government interest are likely to rise to the conscience-shocking level.  Id. at 1375.  The court also noted that "[o]nly in the limited context of due-process claims based on excessive corporal punishment has this court held that the intentional conduct of a high-school educator may shock the conscience."  Id. at 1378.

In Davis, the plaintiffs bought a § 1983 action for violating their son's substantive due process rights after the son died the morning after a voluntary workout session for the school football team.  Davis, 555 F.3d at 981.  The plaintiffs contended that their son faced an intense and unreasonable practice that caused him to collapse and die the next morning.  Specifically, plaintiffs alleged that the coaches failed to provide enough water to keep Davis hydrated, ignored signs and Davis' complaints that he was becoming dehydrated, subjected Davis to rigorous

conditioning drills at the end of a two-hour practice, and failed to attend to Davis until after a team meeting, even though he had collapsed in the middle of the drills. Id. at 980–81. The plaintiffs further alleged that if a student did not perform all the exercises and activities in the workout, he would be subject to discipline from the coaches, such as more drills, exclusion from tryouts, or demotion to the junior varsity team. Id. On these facts, the Eleventh Circuit found that the coaches did not violate the student's constitutional rights because they did not engage in corporal punishment, physically contact the student, or otherwise "act[ ] willfully or maliciously with an intent to injure" the student. Id. at 984. The court noted that "the coaches were deliberately indifferent to the safety risks posed by their conduct," but found that in a school setting, "allegations of deliberate indifference, without more, do not rise to the conscience-shocking level required for constitutional violations." Id.

Here, Coach Delgado is alleged to have made conscious decisions and intentional acts to deprive Zachary of water and subjected Zachary to continued rigorous practice to punish him.[1] Even so, such a motive does not create a constitutional violation

---

[1] Plaintiff alleges also that the School Board essentially set the stage for such egregious actions to occur at one of its schools.

under Eleventh Circuit precedent.  Plaintiff alleges that players had access to water and Zachary was never physically prevented from drinking water and Coach Delgado only threatened to dismiss players who took a break from practice.

Plaintiff does not allege that Coach Delgado made physical conduct with Zachary or engaged in corporal punishment or acted with an intent to punish or injure the minor child.  While the alleged conduct might be mistaken or negligent, the Court follows Eleventh Circuit precedent and finds that these allegations do not rise to the conscience-shocking level.  In sum, defendants' actions were not the type of intentional and excessive corporal punishments inflicted by the school officials in Neal and Kirkland. The alleged conduct that has been pled after plaintiff was afforded the opportunity to amend is no worse than the deliberate indifference shown by the coaches in Davis.  The Court therefore finds that plaintiff has failed to allege a substantive due process violation and dismissal of Counts I and II is warranted.

**B. Remaining Claims**

The Court need not address the issues raised in Lee County EMS' Motion to Dismiss (Doc. #55) as to the remaining counts.  The remaining possible claims in the Second Amended Complaint are all state law claims.  Even assuming these are properly pled, under 28 U.S.C. § 1367(c)(3), the Court exercises its discretion and declines to exercise supplemental jurisdiction over the state

claims. Raney v. Allstate Ins. Co., 370 F.3d 1086, 1088–89 (11th Cir. 2004) (encouraging district courts to dismiss state claims where all claims which provided original jurisdiction have been dismissed.)

Accordingly, it is hereby

**ORDERED:**

1. The School Board of Lee County and James Delgado's Motion to Dismiss Counts I and II brought pursuant to 42 U.S.C. § 1983 (Doc. #54) is **GRANTED** and Counts I and II are **dismissed with prejudice.**

2. All other counts are **dismissed without prejudice**.

3. The Clerk is directed to enter judgment accordingly, terminate any pending motions and deadlines, and close the file.

4. Defendant Lee County EMS' Motion to Dismiss (Doc. #55) is **DENIED AS MOOT**.

**DONE and ORDERED** at Fort Myers, Florida, this __2nd__ day of January, 2020.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Counsel of Record